```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Emil Macri,

                Plaintiff,              CV-03-3860 (CPS)

     - against -                        MEMORANDUM
                                        OPINION AND ORDER
Aetna U.S. Healthcare,

                Defendant.
----------------------------------------X
```

SIFTON, Senior Judge.

Emil Macri brings this action pursuant to the Employee Retirement and Income Security Act, 29 U.S.C. § 1001, seeking review of a denial of his request for short- and long-term disability benefits by the defendants Aetna U.S. Healthcare ("Aetna"). Macri alleges the following claims for relief: 1) recovery of short-term disability benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); 2) recovery of long-term disability benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); 3) failure to provide a "full and fair review" pursuant to 29 U.S.C. § 1133; 4) recovery of life insurance premiums pursuant to 29 U.S.C. § 1132(a)(1)(B); and 5) recovery of attorney's fees pursuant to 29 U.S.C. § 1132(g).

Presently before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Aetna's motion for summary judgment is granted, and Macri's motion for summary judgment is

denied.

## Background

The following facts are drawn from the administrative record of defendant's proceedings with respect to plaintiff's applications for benefits, the parties' submissions in connection with these motions, and Aetna's Local Rule 56.1 statement.[1] They are undisputed except where noted.

Macri was employed by North Shore-Long Island Jewish Health System as a systems analyst. According to a letter from Macri's manager, Macri managed computer system installations. The job was "fast paced," and he was required "to handle multiple tasks simultaneously, often with tight deadlines." (Administrative Record [hereinafter "AR"] 285.) He was responsible for system support "24 hours a day, 7 days a week" because certain technical problems would require immediate attention. (AR 285.) A job posting describes the physical demands of the position as requiring constant sitting, frequent walking and standing, and occasional bending and turning. (AR 273.) The "mental demands" of the job require an employee who is "[a]lert and skilled in appropriately assessing the job to be done and completing a variety of tasks quickly, accurately and in the correct sequence." (AR 273.)

Through his employer, Macri was a member of North Shore's "Flex Benefit Program" ("the Plan"). Benefits are provided by

---

[1] Macri has not submitted a Local Rule 56.1 statement or a response to the Aetna's statement.

the Plan through Group Insurance Policy No. 725110, issued by Aetna to North Shore. The plan provides that it will pay a monthly benefit during a period of "total disability." (AR 8.) For purposes of both short- and long-term disability benefits, "total disability" occurs when "solely because of injury or disease, [the claimant] is unable to perform the material duties of [his] own occupation." (AR 8, 48.)

The standard for total disability becomes more stringent after twenty-four months of short-term benefits. At that point, a claimant is only considered totally disabled if he is unable, "solely because of injury or disease, to work at any reasonable occupation." (AR 8.) Benefits are not paid under the Plan for more than twenty-four months for a total disability that "is caused to any extent by a mental condition." (AR 66.)

The Plan also provided life insurance. The life insurance policy provided that in the event that Macri became permanently disabled, premium payments would be waived. (AR 100.) "Disability" for the purposes of this provision was defined as an inability to work at any reasonable job. (AR 100.)

Short-Term Benefits Application

Macri applied for short-term disability benefits on June 21, 2000, after receiving angioplasty to treat a heart condition. On July 14, 2000, Aetna approved Macri's application for short-term disability benefits through August 10, 2000.

Macri sought short-term disability benefits beyond August

10. In support of his application, Macri submitted the report of his treating physician Dr. Alan Cohen. (AR 260.) Cohen stated that although Macri was physically capable of sedentary work, he suffered from a mental or nervous impairment that required him to avoid stressful situations. (AR 260.)

Aetna referred Macri's file to its in-house doctors. (AR 277.) After reviewing the file, Dr. Kemler concluded on September 20, 2000, that Macri's heart disease did not render him disabled. (AR 278.)

On September 25, 2000, Macri's application for continued short-term disability benefits for the period of August 17, 2000, until December 28, 2000, was denied. The information before Aetna relating to Macri's medical condition included a letter from Dr. Cohen stating that Macri had undergone cardiac catheterization that:

> revealed well preserved LV function, with no symptoms of chest pain, with stress test revealing anterior ischemia, with a LIMA graft patent to the LAD and the native circumflex free of disease and the RCA vein graft previously stented and having moderate but not significant stenosis.

A progress note from Dr. Cohen, dated August 16, 2000, stated that "a repeat cardiac catheterization . . . does not show any recurrent stenosis in stent area, minor luminal irregularities. Also, you should resume a exercise program." Dr. Cohen further advised that Macri would need occasional rest, and should avoid stressful situations and heavy lifting. Aetna concluded that the information provided by Macri's doctor "did not contain sufficient documentation to support medical necessity for

disability past August 16, 2000" and denied the application for continued benefits.

Macri appealed this decision. On November 17, 2000, Aetna upheld its denial of Macri's claim for continued short-term disability benefits after a review of the file by Dr. Parag Patel. Dr. Patel concluded that the record suggested only a "mild cardiac impairment." Patel noted that Dr. Cohen advised Macri to avoid heavy lifting and stress. (AR. 292.) Patel observed, however, that the:

> [r]ecords do not support that Mr. Macri had difficulty coping with stress from his job or had experienced angina or any other adverse physical effects due to stress associated with his job prior to his recent cardiac evaluations. He was released by his physicians to return to this level of stress after his coronary artery bypass grafting and after stent replacement. Therefore, there is no indication that this same level of stress would cause him to have stress related angina or other adverse health effects subsequent to his recent cardiac workup.

Patel advised that "Mr. Macri should try to avoid 'on call' responsibilities, as this could cause increased adrenalin (norepinephrine) release and could contribute to worsening of his cardiac condition" but that "Macri's records do not indicate that he experiences angina or has difficulty coping with the level of stress associated with his job." Aetna adopted Patel's reasoning and upheld the denial of continued benefits.

Long-Term Benefits Application

In November, 2001, Macri applied for long-term disability benefits. This claim was approved on January 22, 2002, when

Aetna determined that Macri was disabled from his usual occupation and approved long-term disability benefits for a twenty-four month period. The decision was based not on Macri's cardiac condition, but based on a diagnosis of severe anxiety.[2] (AR 199.) Because the Plan did not provide benefits for more than twenty-four months for disabilities caused by mental conditions, Macri was informed that his benefits would eventually terminate unless Macri could demonstrate that he was unable to perform any reasonable occupation due to a physical ailment.

As part of his application for long-term disability benefits, Macri also sought a waiver of the premium for his group life insurance plan. (AR 200.) Such a waiver was available only if he met the more strict "unable to perform any reasonable occupation" standard. Aetna denied this request because there was insufficient evidence on record that Macri's met this standard. Rather, Aetna determined that Macri was merely unable to perform his job as systems manager.

Aetna subsequently referred Macri's file to Dr. David Dickison for an evaluation. (AR 360.) Dickison confirmed that Macri was physically capable of light activity, such as raking leaves, but that anxiety impaired his ability to perform at his former occupation. (AR 360.)

---

[2] Because Aetna approved the claim, the reasoning for its decision is not made explicit in its notification to Macri. (*See* AR 199-201.) Accordingly, it is not clear what information it relied on in making this decision that it did not consider when it denied Macri's claim for short-term benefits.

Once the twenty-four month period of benefits expired, Macri filed an appeal with Aetna by letter dated February 3, 2003. (AR 218.) Macri claimed that his disability was the result of a physical ailment – his heart condition. (AR 218.) The anxiety, Macri argued, was merely a product of this cardiac problem. (AR. 219.) Macri submitted a November 6, 2002, evaluation from Dr. Cohen indicating that Macri suffered from chest pains. (AR 364.) Dr. Cohen also stated that during an eight-hour work day, Macri could only sit for two hours, stand or walk for one hour, and could safely lift no more than ten pounds. (AR 365.) Dr. Cohen opined that Macri was permanently disabled, due both to his cardiac condition and an anxiety disorder, and that his physical symptoms would be aggravated by stress. (AR 366, 369.)

Also on the record was a report by Dr. Robert Goldstein, Macri's psychiatrist. (AR 327.) Goldstein observed that Macri's complaints of chest pain and shortness of breath were "psychophysiological" and "the result of stress and anxiety . . . rather than caused by cardiac disease per se." (AR 328.) Goldstein also described Macri as having "anxiety and hypochondriacal preoccupations." (AR 328.)

Macri also submitted the report of a second attending physician, Dr. Fasanello. (AR 346.) Fasanello described Macri's symptoms as "anxiety" and "nerves." (AR 346.) Fasanello believed that Macri was physically capable of clerical or administrative work. (AR 347.)

On April 28, 2003, Aetna completed review of Macri's appeal,

and reaffirmed its conclusion that he was disabled due to anxiety and stress, not physical limitations. (AR 232-33.) Aetna noted that Macri had not submitted any medical test results after January 2001, no hospitalization records, and no evidence of "unstable angina or any cardiac limitations" and that no congestive heart failure or arrhythmias were documented. (AR 234.) Dr. Cohen's opinion concerning physical limitations had not been documented by objective evidence. (AR 234.) Aetna therefore concluded that Macri was physically capable of medium or light work. Aetna denied the appeal, and indicated that Macri was not physically incapable of performing all "reasonable occupations." (AR. 234). Aetna also denied Macri's application for a waiver of life insurance premiums because he was not disabled from working at any reasonable job. The notice informed Macri that the decision would be reconsidered if he submitted additional information supporting his claim. (AR 201.)

## Discussion

Summary judgment may be granted where it is shown that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(c). The Court is required to view the evidence in the light most favorable to the non-moving party. *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998). The party seeking summary judgment bears the burden of demonstrating the abasence of any material factual issue genuinely in dispute. *Am. Int.*

*Group, Inc. v. London Am. Int. Corp.*, 664 F.2d 348, 351 (2d Cir. 1981).

ERISA provides a beneficiary with a cause of action "to recover benefits due to him under the terms of his plan, or to clarify his rights to future benefits under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility for benefits or to construe the terms of a plan, a court confronted with such a claim should "not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.' " *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995). The parties do not dispute the applicability of the "arbitrary and capricious" standard of review to this case.[3]

The arbitrary and capricious standard of review is narrow, and a court should not disturb the administrator's decision unless "it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 442. Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached." *Celardo v. GYN Auto. Dealers Health & Welfare Trust.*, 318 F.3d 142, 146 (2d Cir. 2003). Thus, the decision will be upheld so

---

[3] Decisions of ERISA plan administrators or normally reviewed *de novo* unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case a court applies the narrower arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

long as it "falls somewhere on a continuum of reasonableness–even if on the low end." *Davis v. Commercial Bank of N.Y.*, 275 F. Supp. 2d 418, 425 (S.D.N.Y. 2003). Review under this standard is based on the record before the administrator at the time of decision. *Risk v. Log Term Disability Plan of the Dun & Bradstreet Corp.*, 862 F. Supp. 783, 791 (E.D.N.Y. 1994).

Short-Term Disability Claim

Macri contends that Aetna acted arbitrarily and capriciously when it denied his application for short-term disability benefits. Macri argues that Dr. Cohen advised him to avoid stressful situations, and Dr. Patel concluded that he should avoid being "on call," but his job description stated that he was responsible for providing technical support "24 hours a day, 7 days a week," and the job was fast-paced. Macri therefore contends that Aetna should have concluded that the stressful nature of his job rendered him unable to perform it safely. Aetna argues that this job description does "not specify how often [Macri] was 'on call' and it did not indicate that the stress level was considered exceptionally high," (Defendant's Memo. 8), and that it was entitled to rely on Dr. Patel's determination that Macri could safely return to work.[4]

---

[4] Macri does not contend that it was arbitrary and capricious for Aetna to deny his claim for short-term benefits in November, but approve his subsequent claim for long-term benefits in the following January. Neither party has addressed the issue, but an examination of the administrative record reveals that Macri submitted a report from

(continued...)

In denying Macri's claim that he was unable to perform his occupation in light of his cardiac problems because of its stressful nature, Aetna relied on Dr. Patel's statement that "Records do not support that Mr. Macri had difficulty coping with stress from his job or had experienced angina or any other adverse physical effects due to stress associated with his job prior to his recent cardiac evaluations."  Dr. Patel was also in possession of Macri's job description and concluded that "there is no indication that this same level of stress would cause him to have stress related angina or other adverse health effects." (AR 293.)  Dr. Patel determined that the amount of stress suggested by Macri's job description was not an inappropriate level for him to endure.  There was therefore substantial evidence on the record supporting Aetna's conclusion that Macri was able to perform the material duties of his position.  *Cf. Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004) (insurer's decision upheld when it rejected the opinions of several physicians who concluded that plaintiff should not hold a high stress job and adopted position of physician who concluded that although claimant suffered from serious heart condition, he could return to his high stress job with no restrictions).

---

(...continued)
his psychiatrist, Dr. Goldstein, in support of his application for long-term benefits that he did not submit in support of his application for short-term benefits.  (*See* AR 327.)  Dr. Goldstein diagnosed Macri as "suffering from a serious psychiatric condition." (AR 330.)

Long-Term Disability Benefits

It is unclear precisely what aspect of Aetna's decision denying long-term disability benefits Macri challenges. At one point, Macri contends that Aetna misinterpreted the plain meaning of the Plan, but he does not state in what respect. Liberally construed, however, Macri seems to argue that Aetna's conclusion that mental symptoms of a physical impairment cannot constitute a long-term disability within the meaning of the Plan was arbitrary and capricious.

A trustee's interpretation of a plan is arbitrary and capricious were it renders some provision superfluous or is inconsistent with the plain language. *N.Y. State Teamsters Conference Pension & Ret. Fund v. United Parcel Serv.*, *Inc.*, 382 F.3d 272, 282 (2d Cir. 2004). The plan defines disability as "the inability, solely because of injury or disease, to perform the material duties to work at any reasonable occupation." (AR 65.) As noted, the Plan states that benefits will not be paid for more than twenty-four months for a disability that "is caused to any extent by a mental condition." Macri presents no argument why Aetna's conclusion that his anxiety and depression constituted a "mental condition" that to a substantial extent caused his inability to work was arbitrary or capricious or in conflict with the plain meaning of the Plan.

Macri may also be arguing that Aetna's finding that his disability was mental, not physical was an abuse of discretion. There was, however, substantial evidence supporting that finding.

Dr. Pasanello stated that Macri was physically capable of light office work. (AR 347.) And Dr. Cohen's opinion that Macri was disabled was based in substantial part on Macri's anxiety disorder. (AR 369.) There was therefore substantial evidence from which Aetna could conclude that Macri's disability was caused to a substantial extent by a mental condition.

Denial of a Full and Fair Review

Macri's third claim for relief alleges that he was denied a "full and fair review" of his benefit claims as required by 29 U.S.C. § 1133(2). The statute requires that employee benefit plans "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." *Id.* This requires the administrator to promptly notify the participant in easy to understand language with the specific reasons that his claim has been denied. *Winkler v. Metropolitan Life Ins. Co.*, 03 Civ. 9656, 2005 WL 911862, at *5 (S.D.N.Y. April 18, 2005). The administrator must also identify the evidence relied on and provide an opportunity to submit written comments or rebuttal evidence. *Id*.

Courts employ a test for "substantial compliance" in determining whether these requirements are met. *Id.* The purpose of this test is to ensure that the claimant is provided with enough information for further administrative review or an appeal to the federal court. *Neely v. Pens. Trust Fund of the Pens.*

*Hosp. and Benefit Plan of the Elec. Indus.*, 2004 WL 2851792, at *8 (E.D.N.Y. Dec. 8, 2004). The lack of a full and fair review can constitute an arbitrary and capricious decision. *Crocco v. Xerox*, 137 F.3d 105, 108 (2d Cir. 1998).

Macri cites to no evidence and provides no argument supporting his claim for a denial of a full and fair review. As previously described, the record reveals that Aetna provided reasoned justifications for each denial of benefits, accompanied by citation and discussion of the evidence relied upon, and notified Macri of his opportunities to appeal those decisions. Thus, the undisputed evidence establishes that Macri was afforded a full and fair review of his claim and the defendants are entitled to summary judgment on the claim.

Recovery of Life Insurance Premiums

Under the terms of Macri's Group Life Insurance plan, an employee must be totally disabled so as to be unable to perform any reasonable occupation in order to be entitled to a waiver of life insurance premiums. (AR 100.) As previously discussed, Aetna's determination that Macri was not totally disabled was within the bounds of its discretion and based on a plain reading of the Plan's language. Accordingly, Aetna is entitled to summary judgment on Macri's fourth claim for relief.

Attorney's Fees

Macri's fifth claim for relief seeks attorney's fees

pursuant to 29 U.S.C. § 1132(g)(1).  Because Macri has not prevailed on any of his claims for relief, an award of fees is inappropriate and the defendants are entitled to summary judgment on the fifth claim for relief.

## Conclusion

For the foregoing reasons, Macri's motion for summary judgment is denied, and Aetna's cross-motion for summary judgment is granted.

The Clerk is directed to enter judgment for the defendant and to transmit a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.

Dated :   Brooklyn, New York

June 20, 2005

By: /s/ Charles P. Sifton (electronically signed)
United States District Judge